IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VICTOR YEBRA,                                    CV 06-1533-MA

       Plaintiff,                            OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.

MERRILL SCHNEIDER
P.O. Box 16310
Portland, OR 97292
(503) 255-9145

LINDA S. ZISKIN
3 Monroe Parkway, Suite P, PMB #323
Lake Oswego, OR 97035
(503) 210-0295

       Attorneys for Plaintiff


1  - OPINION AND ORDER

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

FRANCO L. BECIA
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2114

      Attorneys for Defendant


MARSH, Judge.

     Plaintiff filed a civil action for judicial review of a final decision of the Commissioner denying his applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and supplemental security income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.  Plaintiff alleges the Administrative Law Judge (ALJ) erred in finding he is not entitled to benefits and seeks an order reversing the Commissioner's decision and remanding the case for an award of benefits.  The Commissioner contends his decision is based on substantial evidence and is free from legal error.  The Commissioner, therefore, requests that the court affirm his decision.

     This court has jurisdiction under 42 U.S.C. § 405(g).  For the following reasons, the court **REVERSES** the final decision of

2  - OPINION AND ORDER

the Commissioner and **REMANDS** this action for further proceedings consistent with this Opinion and Order.

## BACKGROUND

Plaintiff applied for DIB and SSI on July 26, 2004. His applications were denied initially and on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on April 21, 2005.

The ALJ issued a decision on June 8, 2005, in which he found plaintiff was not entitled to benefits. That decision became the final decision of the Commissioner on September 20, 2006, when the Appeals Council denied plaintiff's request for review.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are

3 - OPINION AND ORDER

supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  "Substantial evidence means more than a mere
scintilla but less than a preponderance; it is such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.
1995).

The court must weigh all of the evidence whether it supports
or detracts from the Commissioner's decision. Martinez v.
Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's
decision must be upheld, however, even if the "evidence is
susceptible to more than one rational interpretation." Andrews,
53 F.3d at 1039-40.

The decision whether to remand for further proceedings or
for immediate payment of benefits is within the discretion of the
court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert.
denied, 121 S. Ct. 628 (2000).  "If additional proceedings can
remedy defects in the original administrative proceeding, a
social security case should be remanded." Lewin v. Schweiker,
654 F.2d 631, 635 (9th Cir. 1981).

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has developed a five-Step sequential
inquiry to determine whether a claimant is disabled. Bowen v.
Yuckert, 482 U.S.137, 140 (1987).  See also 20 C.F.R. § 416.920.
The claimant bears the burden of proof at Steps one through four.

See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each
step is potentially dispositive.

Here, at Step One, the ALJ found plaintiff has not engaged
in substantial gainful activity since the onset of his alleged
disability.

At Step Two, the ALJ found plaintiff suffers from
degenerative disc disease and seizure disorder that are severe.
20 C.F.R. §§ 404.1520(c) and 416.920(c).

At Step Three, the ALJ found plaintiff's impairments did
not meet or equal any of the listed impairments considered to
to be so severe as to preclude substantial gainful activity.
20 C.F.R. §§ 404.1520(a)(4)(iii) and (d), and 416.920(a)(4)(iii)
and (d).

The ALJ found plaintiff has the residual functional capacity
(RFC) to perform light work that does not involve complex tasks.
20 C.F.R. §§ 404.1567 and 416.967.  As such, plaintiff is limited
to working in a highly structured environment doing the same
tasks without new learning.  He should not drive or work at
heights or around dangerous machinery, and he should be expected
to miss work because of seizures about once a month to once every
two or three months.

At Step Four, the ALJ found plaintiff is able to perform his
past relevant work as a mail inserter.  Accordingly, the ALJ did
not need to make a finding at Step Five as to plaintiff's ability

to perform other work.

Based on these findings, the ALJ found plaintiff was not under a disability.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

Plaintiff objects to the ALJ's findings on the following grounds:  (1) the ALJ improperly rejected opinions of plaintiff's treating and examining physicians; (2) the ALJ erred in finding plaintiff is capable of sustained employment; (3) the ALJ erred in finding plaintiff was non-compliant with prescribed treatment; (4) the ALJ erred in finding plaintiff's impairments were not equivalent to a listed impairment; (5) the ALJ erred in rejecting lay witness testimony; and (6) the testimony of the vocational expert as to plaintiff's past relevant work was flawed.

Plaintiff asserted objections (4), (5), and (6), for the first time in his reply memorandum although he anticipated them in his opening brief, stating he "reserves the right to address the Step 2 and 3 issues in a reply brief, should one become necessary.

In response, the Commissioner asserts none of plaintiff's specific objections have merit, and plaintiff has waived any objections made for the first time in his reply memorandum.

## EVIDENTIARY RECORD

### Plaintiff's Background.

Plaintiff was 42 years old on the date of the hearing.  He has a 10th grade education, and has worked previously as a

warehouse packer, interpreter, customer service representative, and mail inserter. When he was seven or eight years old, plaintiff was struck in the head with a hammer. He began having seizures a year or so later.[1]

In his most recent employment from August 2002 to May 2003, and May 2004 to June 2004, plaintiff worked for Wells Fargo as a mail inserter, which was a light duty job. He stopped working there in 2003 when he started to have seizures again and muscle spasms from a prior neck and shoulder injury. He returned in 2004, but lasted only 20 days on the job because he could not concentrate and kept making mistakes. He states he quit the job, however, because he "was going through muscle spasm."

Plaintiff's medications help him to control his seizures when he remembers to take them. While he was working at Wells Fargo he had muscle spasms but did not have any seizures. Since he stopped working, he has had five or six seizures.

On a daily basis, plaintiff has difficulty with his memory, ability to concentrate, and fear of having a seizure. He does not drive and has occasional problems riding the bus, forgetting where to get off or boarding the wrong bus. He does some housework and is able to lift 25 lbs occasionally and 15 lbs frequently.

---

[1] This evidence is drawn from plaintiff's hearing testimony and other evidence in the record, such as medical records and earnings history.

7  - OPINION AND ORDER

**Medical Records**.

As noted, the ALJ found plaintiff suffers from severe impairments of degenerative disc disease and seizure disorder.

The medical records as to each of these impairments reflect as follows:

Degenerative Disc Disease.

Plaintiff injured his neck and back on the job in June 1997. By self-report, he saw "about seven doctors" over the next year who treated him to no avail.  In June 1998, he went to the emergency room complaining of back and neck pain.  He was advised there was "very little" that could be done in an emergency room to treat him for "a one year problem of chronic neck and back pain.

In July 2001, plaintiff complained of pain in his left shoulder and arm lasting three days, apparently caused when he was pulling a carpet at home.  The treating physician noted the "degree of pain does not seem to match history."

In August 2003, plaintiff complained of left shoulder pain. On examination, he reported no loss of strength and no numbness or weakness in his hands.

In August 2004, after he suffered one of his seizures, plaintiff went to the emergency room complaining of neck pain radiating down his right arm.  On examination, plaintiff had "pain following the nerve pattern off his rotator cuff in the

8  - OPINION AND ORDER

radial portion of his arm" and his "[shoulder muscle group] does feel somewhat tense to palpation."  Plaintiff had "full range of motion" and "no limitations."

Seizure Disorder.

In a vocational assessment performed in 2001, plaintiff was described as suffering from two types of seizures - generalized seizures involving migraine headaches, sleepiness, and hearing beeping sounds, which occur less than once a year, and simple partial seizures involving feelings of fear and right ear hearing changes, which occur approximately three times per year. Plaintiff also suffers losses of memory as a consequence of the seizures.

Two neurologists have offered opinions regarding plaintiff's ability to work in light of his ongoing seizure disorder.

Osamu S. Muramoto, M.D.

Dr. Muramoto treated plaintiff from 2001 through December 2003 for his seizure disorder. In April 2005, plaintiff's attorney requested Dr. Muramoto to complete a preprinted form assessing plaintiff's limitations as a result of his seizures. Dr. Muramoto stated he prescribed medications that control plaintiff's seizures, but plaintiff suffers "occasional breakthrough seizures" at "unpredictable times" despite the medications.  The seizures, however, are not frequent enough to cause plaintiff to have two or more unscheduled absences per

month.

Dr. Muramoto concluded plaintiff can lift 20 lbs occasionally and 10 lbs frequently, stand and/or walk at least two hours in an eight-hour workday, and sit (with normal breaks) about six hours in an eight-hour workday.  Plaintiff also has the unlimited ability to push and pull, and he can climb, balance, stoop, kneel, crouch, and crawl occasionally.  He is also able occasionally to reach in all directions, and has occasional limitations as to both his fine and gross fingering and hand manipulation abilities, and his sense of touch.  Plaintiff should avoid frequent exposure to extremes of hot and cold, wetness and humidity, noise and vibration, have only occasional exposure to fumes, and should avoid all exposure to hazards.

Dr. Muramoto also found plaintiff has a moderate impairment in his ability to maintain concentration, persistence, and pace.

Dr. Muramoto cautioned he had not seen plaintiff since December 2003 and his information "may not be current."

Norman K. So, M.D.

Dr. So performed a consultative examination of plaintiff in March 2005.  Dr. So diagnosed complex partial and secondarily generalized convulsions.  He also found plaintiff has limited intellectual function and impaired memory functions.

As to plaintiff's functional limitations relative to

employment, Dr. So recommended he work only for an employer who recognized special assistance needs in a non-competitive work environment.  The work should be highly structured involving repetitive tasks without the need for new learning.  Plaintiff should not drive or operate machinery.

DDS Physicians - Sharon Eder, M.D.
                        Martin Kehrli, M.D.

Dr. Eder and Dr. Kehrli reviewed plaintiff's medical records on behalf of the Commissioner and opined plaintiff's only significant physical limitations were that he should avoid hazards and not climb ladders, ropes or scaffolds.

DDS Psychologists - Karen Bates-Smith, Ph.D.
                           Bill Hennings, Ph.D.

Drs. Bates-Smith and Hennings reviewed plaintiff's medical records and concluded his only psychological impairment was a non-severe learning and memory disability resulting in a mild limitation in maintaining concentration, persistence, or pace.

**DISCUSSION**

As noted, Plaintiff asserts the ALJ erred in six particulars[2] that justify remand for the payment of benefits.

---

[2] Plaintiff asserted objections (4), (5), and (6) for the first time in his reply memorandum although he anticipated them in his opening brief, stating rather cavalierly, he "reserves the right to address the Step 2 and 3 issues in a reply." Plaintiff has no such "right."  Rather, this court has the discretion to consider issues raised for the first time in a reply brief.  In this case, nevertheless, the court exercises its discretion to consider all the issues raised by plaintiff.

11 - OPINION AND ORDER

1.   **<u>Rejection of Physicians' Opinions</u>**.

Plaintiff contends the ALJ failed to give adequate reasons for rejecting opinions of the treating physician, Dr. Muramoto, and the examining physician, Dr. So., regarding plaintiff's functional limitations.

"An ALJ may reject the uncontradicted medical opinion of a treating physician only for clear and convincing reasons supported by substantial evidence in the record." <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998).  If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight.  An ALJ may reject the uncontradicted medical opinion of a treating physician only for "clear and convincing reasons supported by substantial evidence in the record."  <u>Id.</u>

<u>Dr. Muramoto</u>.

Plaintiff argues the ALJ improperly rejected Dr. Muramoto's opinion that plaintiff could stand only two hours in an eight-hour work-day.  The ALJ, however, stated as his reason for that opinion the absence of any evidence of neurological deficits or motor weakness in the lower extremities, and affirmative evidence that plaintiff's gait was normal.  I find these reasons are supported by the medical record and are sufficient.  Moreover,

Dr. Muramoto's actual opinion was that plaintiff was able to stand at least two hours in an eight-hour workday.  There is no evidence plaintiff's past relevant work required that degree of standing.

As noted, Dr. Muramoto also opined plaintiff has "moderate" mental limitations as to his ability to maintain concentration, pace, or persistence on the job.  The record as a whole clearly reflects plaintiff's memory deficit is one of bases for that limitation.  Although plaintiff did not raise the issue, the record reflects the ALJ either missed or chose to ignore Dr. Muramoto's opinion as to the severity of plaintiff's memory deficit when he found it resulted only in a "mild" limitation in his ability to maintain concentration, persistence, and pace. Instead, the ALJ relied on the DDS consulting physicians' summary conclusion that plaintiff's "allege[d]" limitation in his ability to maintain concentration, persistence, or pace, was only mild.

On this record, I find Dr. Muramoto's opinion, as treating physician, is consistent with other substantial evidence in the record and is entitled to controlling weight.  The ALJ erred in disregarding the opinion in his disability analysis.  As a result, the ALJ failed to consider adequately the potential severity of plaintiff's memory deficit and the resulting effect it has on his ability to maintain concentration, persistence, or pace.

13 - OPINION AND ORDER

Dr. So.

Plaintiff argues the ALJ erred in rejecting Dr. So's opinion that plaintiff had significant deficiencies in concentration, persistence, or pace that would make him unable to work in a competitive work environment.

Dr. So, in fact, did not specifically address plaintiff's ability to maintain concentration, persistence, or pace.  Dr. So's concerns in that regard related to plaintiff's borderline intellectual functioning.  The ALJ found Dr. So's opinion was consistent with the medical record and gave it some significant weight.  The ALJ merely noted, correctly, there was no evidence of a psychiatric impairment requiring either in- or out-patient treatment.

I find plaintiff's objections on this issue are misplaced and without merit.

**2.  Plaintiff's Capacity for Sustained Employment.**

Plaintiff contends the ALJ erred in finding that, because plaintiff was able to engage in activities of daily living, he was capable of sustained employment.  The ALJ listed the activities plaintiff undertook on a daily or weekly basis, including cooking, tending to his personal care needs, laundry, shopping, riding the bus, and being generally active for up to five hours before needing to rest.  He concluded those activities reflected  an "active and healthy lifestyle" that was

14 - OPINION AND ORDER

"inconsistent with an incapacitating or debilitating condition."
The ALJ, therefore, found plaintiff's testimony and that of his
sister was not "sufficiently credible" to warrant the
establishment of more restrictive limitations."

I find no error in general with the ALJ's finding as to
plaintiff's physical limitations, but I find an issue remains as
to whether the ALJ adequately considered plaintiff's memory
deficit and its impact on his ability to maintain concentration,
persistence, or pace.

3.    **Plaintiff's Noncompliance with Prescribed Treatment**.

Plaintiff asserts the ALJ improperly found that plaintiff's
seizures were well-controlled when he took his prescribed
medications, without taking into account that plaintiff's memory
deficit was the primary reason for his noncompliance.

I have already found the ALJ has not adequately considered
the severity of plaintiff's memory deficit.  Accordingly, I
agree with plaintiff that, to the extent memory is a factor in
plaintiff's noncompliance with his prescription regimen, the
ALJ has erred in considering noncompliance as a substantial
factor in his disability determination, at this stage of the
proceedings.

4.    **Plaintiff's Impairments as Listed Impairments**.

Plaintiff argues the ALJ erred at Step Three in failing to
compare plaintiff's impairments specifically with each applicable

15 - OPINION AND ORDER

listed impairment to establish lack of equivalence.  <u>See</u> <u>Marcia</u>
<u>v. Sullivan</u>, 900 F.2d 172, 176 (9th Cir. 1990)("[I]n determining
whether a claimant equals a listing under step three of the
Secretary's disability evaluation process, the ALJ must explain
adequately his evaluation of alternative tests and the combined
effects of the impairments.").

Here, at Step Three, the ALJ stated without further comment
that "[t]hese medically determinable impairments [degenerative
disc disease and seizure disorder] do not meet or medically equal
one of the listed impairments in Appendix I, Subpart P,
Regulation No. 4."

Notwithstanding the ALJ's brief finding at Step Three, I
conclude his findings regarding the severity of plaintiff's
impairments are based on the medical record as a whole and are
set forth clearly in the body of his decision and are sufficient
to support his Step Three.  Accordingly I conclude the ALJ did
not need to specifically compare the findings with each of the
criteria for a listed impairment.  Indeed, the court notes
plaintiff makes no effort to do so in attempting to establish any
error.

As to plaintiff's impairment of degenerative disc disease,
the ALJ's discussion of the medical record accurately notes the
lack of any evidence to support a finding that the impairments
meet or are equivalent to a listed impairment.  Specifically,

under 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Musculoskeletal
System), for purposes of this case, a listed impairment is one
that involves a loss of function from a [degenerative process[]"
that results in "an inability to ambulate effectively on a
sustained basis for any reason, including pain associated . . .
the inability to perform fine and gross movements effectively on
a sustained basis."  ." <u>Id</u>., at Sec. 1.00 A. and B.1 and 2a.

The ALJ summarized the medical record and concluded
"examination findings show only tenderness with no evidence of
persistent decreased range of motion, motor weakness, loss of
grip strength, persistent signs of radiculopathy, or chronic
neurological deficits."  This summary is consistent with the
medical records as a whole.

As to Plaintiff's seizure disorder, the listed impairment
for epilepsy requires a showing that the seizure activity
"persists despite the fact that the individual is following
prescribed anticonvulsive treatment." 20 C.F.R. Pt. 404, Subpt.
P, App. 1, 11.00A.  Here, the evidence is that plaintiff, whether
because of memory lapse or for other reasons, did not follow
prescribed treatment.  In <u>Lewis v. Apfel</u>, 236 F.3d 503, 512-514
(9th Cir. 2001), the court held an epileptic's failure to follow
prescribed treatment obviated the requirement at Step Three for
the ALJ specifically to compare plaintiff's medical findings with

the criteria for the listed impairment.

On this record, I find the ALJ's finding at Step Three that plaintiff's severe impairments did not meet or equal a listed impairment is consistent with the medical evidence and adequately supported in the ALJ's decision.

5. **<u>Rejection of Lay Witness Testimony</u>.**

Plaintiff argues the ALJ improperly rejected lay witness evidence from plaintiff's sister. She filled out a questionnaire regarding her knowledge of plaintiff's seizure disorder. She stated she had witnessed one seizure in the past month and that plaintiff's seizures were about the same as they were six months ago. She pointed out that a side effect of the medications he takes is that "when I call him he stares off into the wall." She also indicated plaintiff has difficulty related to his taking prescribed medications, that include stress, anxiety and emotional problems, learning disability, brain injury or disease, and money problems.

The ALJ, however, did not reject the sister's evidence. He found the sister's statements were credible to the extent they supported plaintiff's ability to work only "with the delineated residual functional capacity." The ALJ, however, found the statements were "inconsistent with an incapacitating and debilitating condition." That finding is supported by the

record as a whole.

For these reasons, I find the ALJ did not err in his consideration of the lay witness evidence.

**6.   Vocational Expert (VE) Testimony.**

Plaintiff challenges the ALJ's use, or lack thereof, of the VE, Kathryn Heatherly, in reaching his finding regarding plaintiff's ability to perform his past relevant work.  None of plaintiff's arguments have merit.

First, plaintiff argues the ALJ improperly failed to obtain the VE's opinion specifically for the purpose of identifying plaintiff's past relevant work. The Commissioner, however, points out the record contains a work history report completed by plaintiff that describes the physical requirements of all his past jobs and his level of responsibility in those jobs.

Plaintiff cites no case, and the court has found none, that mandates expert vocational testimony as a foundation for identifying a claimants' past relevant work.  To the contrary, social security regulations expressly recognize the claimant is the primary source to document past relevant work, including the exertional demands of that work.  See SSR-82-62 ("The claimant is the primary source for vocational documentation and statements by the claimant regarding past work are generally sufficient for determining the skill level.").  I find the record in this case,

including plaintiff's written description and testimony regarding
his past work provided a sufficient basis for the ALJ's finding
as to plaintiff's past relevant work without the need to resort
to expert testimony on that issue.

Plaintiff next argues the ALJ's hypothetical to the VE
regarding the availability of jobs plaintiff could perform based
on his limitations was incomplete because it did not include
plaintiff's limitations as to concentration, persistence, or
pace.

The ALJ did not include any limitation specifically directed
to concentration, persistence, or pace, although he found
plaintiff "may have some mild limitations in concentration,
persistence, or pace."  The ALJ also acknowledged there was
evidence in the record that plaintiff had difficulty remembering
how to do certain jobs and would forget instructions.  Indeed,
plaintiff testified he was ultimately laid off from his job as a
mail inserter at Wells Fargo in part because he was "making
mistakes on the job" as a result of his memory problems.  As
noted, Dr. So also opined plaintiff would need to be in a job
where the employer recognized special assistance needs.  Finally,
as set forth above, the ALJ ignored Dr. Muramoto's opinion that
plaintiff had a "moderate" limitation in his ability to maintain
concentration, persistence, or pace.

On this record, I find the ALJ erred in not specifically
including a "concentration, persistence, or pace" limitation,
related to plaintiff's memory deficit, in the hypothetical to the
VE.

Finally, plaintiff argues the ALJ erred in relying on a VE
opinion as to plaintiff's relevant work of "mail inserter" that
did not include a specific Dictionary of Occupational Titles
(DOT) identifying number listing the requirements of that job.
Plaintiff asserts the DOT identifier reflects the job includes
working by "hand or machine."  Plaintiff's work limitations
require him to avoid work around machines.

Plaintiff's argument has no merit.  The VE may consider the
requirements of past relevant work either as actually performed
or as usually performed.  <u>See</u> <u>Pinto v. Massinari</u>, 249 F.3d 840,
844-45 (9th Cir. 2001)("The regulations advise an ALJ to first
consider past work as actually performed, and then as usually
performed.").  Plaintiff testified he performed his past work by
hand, and did not use a machine.

<u>**CONCLUSION**</u>

For these reasons, the court **REVERSES** the Commissioner's
final decision denying plaintiff's claim and **REMANDS** this matter
for further administrative proceedings for the Administrative Law
Judge to include in a hypothetical question to a vocational

21 - OPINION AND ORDER

expert that plaintiff has moderate limitations as to

concentration, pace, or persistence.

IT IS SO ORDERED.

DATED this 25 day of September, 2007.


_/s/  Malcolm F. Marsh_____
MALCOLM F. MARSH
United States District Judge

22 - OPINION AND ORDER